UNITED STATES, Appellant

v

DAVID G. SADINSKY, Airman Recruit, U. S. Navy, Appellee

14 USCMA 563, 34 CMR 343

No. 17,457

May 28, 1964

 █

*Commander C. J. Mackres,* USNR, argued the cause for Appellant, United States.

*Lieutenant John Thomas Montag,* USNR, argued the cause for Appellee, Accused.

## Opinion of the Court

KILDAY, Judge:

Tried by special court-martial convened aboard the U.S.S. INTREPID, accused pleaded guilty to unauthorized absence, missing movement, and breach of restriction, in violation of Articles 86, 87, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 887, and 934, respectively. Accused was also charged, under the General Article, with a specification alleging that he "did, wrongfully and unlawfully, . . . through design jump from U.S.S. IN-TREPID (CVS–11) into the sea." To this last alleged delict, accused pleaded not guilty. He was, nonetheless, convicted of all offenses as charged. The court-martial sentenced accused to bad-conduct discharge, confinement at hard labor for five months, and forfeiture of $55.00 per month for the same period.

The convening authority and the officer exercising general court-martial jurisdiction approved the findings and sentence as adjudged, except that the last mentioned authority suspended execution of accused's punitive discharge with provision for automatic remission.

Thereafter, the case came on before the board of review. It concluded that the contested specification failed to allege, either directly or by fair implication, "that the accused's act was a prohibited one." Therefore, the board held the specification failed to set forth an offense cognizable under the Uniform Code, found the same incorrect in law, and ordered it dismissed. The board of review affirmed accused's convictions for those offenses to which he pleaded guilty and the sentence as approved below, except that it reduced the period of forfeitures and confinement to three months.

The Acting The Judge Advocate General of the Navy has forwarded the case to this Court for review pursuant to Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867. The certified issue requires that we determine whether the board of review was correct in holding the contested specification failed to allege an offense.

Article 134, Uniform Code of Military Justice, supra, provides as follows:

"Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court."

It is well settled that the quoted

statute is not void for vagueness. See United States v Frantz, 2 USCMA 161, 7 CMR 37, and authorities therein collated. See also Dynes v Hoover, 20 Howard 65 (U. S. 1858). Nor does the defense contend otherwise. However, as appellate defense counsel points out, the General Article is not such a catchall as to make every irregular, mischievous, or improper act a court-martial offense. Rather, as this Court stated in United States v Holiday, 4 USCMA 454, 456, 16 CMR 28:

" . . . [T]he Article contemplates only the punishment of that type of misconduct which is directly and palpably—as distinguished from indirectly and remotely—prejudicial to good order and discipline."

See also the admonition of paragraph 213a, Manual for Courts-Martial, United States, 1951, to the same effect.

We need not be concerned with the second and third categories set forth in Article 134, supra. The problem before us is simply whether the specification in question alleges commission of an act which is palpably and directly prejudicial to good order and discipline. The defense asserts that it does not, but we conclude to the contrary.

The specification alleges that accused wrongfully and unlawfully, and through design, jumped from the aircraft carrier on which he served, into the sea. That pleading flatly eliminates any possibility that the accused was pushed or slipped, or that the incident otherwise resulted from misfortune, accident, or negligence. Moreover, although addition of words of criminality—in this case that the act was done "wrongfully and unlawfully"—cannot make criminal acts which obviously are not, here that allegation serves to demonstrate the proscribed character of accused's act. Manual for Courts-Martial, United States, 1951, paragraph 28a(3). See, in this connection, United States v Bunch, 3 USCMA 186, 11 CMR 186; United States v Fout, 3 USCMA 565, 13 CMR 121; United States v Julius, 8 USCMA 523, 25 CMR 27;

United States v Brown, 12 USCMA 368, 30 CMR 368; United States v Gaskin, 12 USCMA 419, 31 CMR 5; United States v Holland, 12 USCMA 444, 31 CMR 30; United States v Reid, 12 USCMA 497, 31 CMR 83; United States v Annal, 13 USCMA 427, 32 CMR 427. Thus, the pleading makes clear that accused did not, under unusual circumstances, jump overboard in the course of his legitimate duties as, possibly, to rescue a shipmate, or for some other purpose which might be completely innocent. While such acts might not be offensive, they are effectively excluded by the terms of the specification.

Can it be said, then, that accused's act of jumping from his ship, as the specification alleges he did, falls into a category having merely a remote or indirect impact on good order and discipline? We conclude not. In our view the direct and palpable prejudicial impact of his alleged conduct is manifest. Indeed, although the evidence cannot prop up a defective specification, the proof adduced at trial in support of this offense forcefully illustrates the validity of the conclusion we reach.

It was shown that the incident occurred in the early evening, as it was beginning to get dark. The ship was underway, in a rough sea, proceeding at the rate of approximately ten to fifteen knots. The accused and other members of the crew were standing on an elevator positioned at the flight deck, waiting for aircraft to come down. Accused had wagered a substantial amount with shipmates who did not believe he would jump, one of whom offered an additional sum if accused would do a backflip. He distributed his wallet and watch, along with other items, to his companions, so that they would not get wet. It would have been impossible to swim ashore and, prior to jumping, accused discussed the length of time it would take to rescue him. Further, he asked witnesses to say at any resulting inquiry that he slipped. Accused then jumped from the ship, and in fact did a backflip as he went over the side into the sea. The aircraft carrier did not stop to pick

him up, but accused was subsequently recovered from the sea by a destroyer.

To state such a proposition provides the answer. As the Government argues in its brief, "An intentional wrongful and unlawful jumping into the sea from the deck of a carrier, could not possibly have any result other than disruption of good order and discipline, not to mention the possibility of endangering the property and lives of others in rescue operations."

The majority of the board of review members, notwithstanding, pointed out that the instant specification did not allege facts bringing the accused's act within the prohibition of some order, regulation, or statute limiting conduct or defining the offense sought to be charged. Based on the absence of pleading such prohibition, the majority concluded the specification failed to allege a cognizable offense.

We find no force in the premise they relied upon. Rather, we are in agreement with the dissenting board member that the specification properly alleged a military disorder violative of Article 134, Uniform Code of Military Justice, supra.

To superimpose a requirement that conduct be prohibited by some order, regulation, or statute in order to fall within the proscription of the first category of Article 134 would be contrary to the clear and fair meaning of its terms. If certain acts fell within other specific articles of the Code, they would, manifestly, be "specifically mentioned" elsewhere in the Code, and be outside the scope of the General Article. If the proscription were by other Federal statute, the third category of Article 134 would apply. And were the prohibition made by order or regulation, Article 92, Uniform Code of Military Justice, 10 USC § 892, or perhaps Articles 90 or 91 of the Code, 10 USC §§ 890 and 891, would be involved. Clearly, applying such a standard would effectively emasculate the very essence of Article 134, which is by definition intended, *inter alia,* to reach acts not otherwise covered but which are prejudicial to good order and discipline.

As early as United States v Snyder, 1 USCMA 423, 4 CMR 15, we indicated that the critical inquiry, with regard to the first category of offenses covered by Article 134, was whether the act was palpably and directly prejudicial to the good order and discipline of the service—this notwithstanding that the act was not otherwise denounced. That reasoning is equally applicable here and, as we have seen, it is clear the act committed by accused meets that test. Here the fact that accused's conduct, as alleged, was inimical to good order and discipline was instructed on by the president, and such finding was returned by the members of this special court-martial. See United States v Williams, 8 USCMA 325, 24 CMR 135. And, as was noted in that case, one of this Court's early decisions held such an allegation need not be made in a specification laid under the General Article. See United States v Marker, 1 USCMA 393, 3 CMR 127.

For these reasons we hold that the specification in question did properly allege a violation of Article 134, Uniform Code of Military Justice, supra. It adequately set forth the offense charged, sufficiently apprised accused of what he must be prepared to meet, and the record accurately reflects the extent to which he might claim jeopardy in any future case. See United States v Sell, 3 USCMA 202, 11 CMR 202.

The certified question, therefore, is answered in the negative. The decision of the board of review is reversed. The case is remanded to The Judge Advocate General of the Navy for reference to the board for further action not inconsistent with this opinion.

Chief Judge QUINN and Judge FERGUSON concur.