UNITED STATES, Appellee,

v.

**Specialist Four David W. LOWERY, SSN 280–60–7380, United States Army, Appellant.**

**CM 444480.**

U.S. Army Court of Military Review.

11 Dec. 1984.

Lieutenant Colonel William P. Heaston, JAGC, Major Lawrence F. Klar, JAGC, and Captain Robert W. Wiechering, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Major Patrick M. Flachs, JAGC, and Captain Edmond R. McCarthy, Jr., JAGC, were on the pleadings for appellee.

Before WOLD, FELDER and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT ON RECONSIDERATION

NAUGHTON, Judge:

This case is before the Court for reconsideration of its 9 November 1984 decision.

Consistent with his pleas, appellant was found guilty of receiving stolen property (Charge III) in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982) [hereinafter cited as UCMJ].[1] He was sentenced to a bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for eighteen months, and reduction to the grade of Private E–1. Pursuant to a pretrial agreement, the convening authority disapproved confinement in excess of one year and one day, but approved the sentence in all other respects.

Appellant contends that his guilty plea was improvident. He asserts, and we agree, that the facts elicited on the record do not support the plea.

To resolve this issue, we must examine the record to determine whether appellant's version of his acts or omissions constituted the offense to which he pled guilty. Para. 70*b*, Manual for Courts-Martial, United States, 1969 (Revised edition), Change 5 (1981) [hereinafter Manual].

According to appellant, in December 1982, a civilian, Jim Pierce, approached appellant at Fort Knox, Kentucky, and informed him that he wished to sell some of his weapons[2] in order to raise enough money to leave the state. Appellant suggested

---

1. Appellant pled not guilty to larceny (Charge I) and housebreaking (Charge II), violations of Articles 121 and 130, UCMJ, 10 U.S.C. §§ 921 and 930 (1982). The Government did not contest these charges and not guilty findings were entered thereon.

2. The parties stipulated that the weapons involved—five Remington shotguns, one Sako rifle, one Volunteer shotgun, one Colt pistol, and one Remington Wingmaster Deerslayer—were the same weapons which had recently been stolen from the residence of Staff Sergeant Donald Gregory.

that he knew someone who might be interested in purchasing the weapons. Appellant offered to arrange a meeting and Pierce agreed.

Appellant called his friend, Sergeant Brackett, and asked if he would be interested in purchasing the weapons. Sergeant Brackett replied that he was interested and told appellant to bring the weapons to his residence so that he might examine them. Appellant thereupon picked up Pierce and the weapons in his car and drove to Sergeant Brackett's residence. When they arrived, appellant carried the weapons into Sergeant Brackett's house while Pierce remained in the car. The weapons were left overnight with Sergeant Brackett.

The next day Sergeant Brackett called appellant and told him he did not want to buy the weapons. Sergeant Brackett also mentioned that he had broken down the weapons and had found the name "Gregory" along with four digits engraved in each weapon. Appellant stated that he did not know Gregory. Appellant, however, was aware of Operation Identification—an anti-theft operation run by the military police in which valuable articles are engraved with the owner's last name and last four digits of his social security number. When Sergeant Brackett told appellant about the name engraved in the weapons, appellant became "highly suspicious" the weapons might be stolen.

Appellant later picked up Pierce and drove to Sergeant Brackett's residence. Appellant went into Sergeant Brackett's house to retrieve the weapons while Pierce again waited in the car. Appellant returned to the car and placed the weapons in the back seat. Appellant had previously talked to another civilian, a Mr. Koester, who had expressed an interest in the weapons, so appellant and Pierce then drove to Koester's house.

During the trip to Koester's house, appellant confronted Pierce with the information he had obtained from Sergeant Brackett concerning the name engraved on the weapons. Pierce then admitted to appellant that the weapons were stolen from government quarters, but requested that appellant "at least try to sell a couple for him and get him enough money" to leave Kentucky. Appellant agreed to do so and the two proceeded to Koester's house.

At Koester's house appellant brought the weapons in for Koester to examine while Pierce waited in the car. Appellant explained to Koester that the weapons were stolen. Koester stated that he did not care and gave appellant $120.00 for one rifle. Appellant then returned to the car and gave the unsold weapons and the cash to Pierce. Pierce gave appellant $20.00 for his help.

■ Appellant argues that these facts demonstrate that he did not possess the requisite criminal knowledge of the weapons' stolen character when he first received them. He argues that since such knowledge is an essential element of the offense of receiving stolen property, the offense is not substantiated by the record. The Government concedes that appellant did not possess such knowledge when he first received the weapons; however, they contend that appellant subsequently became dispossessed of the weapons and thereafter received them again with the knowledge that they were stolen.

In *United States v. Rokoski*, 30 C.M.R. 433 (A.B.R.1960), we determined that a soldier who receives stolen property innocently and later discovers that it is stolen may not be found guilty of receiving stolen property. We emphasized that guilty knowledge must be contemporaneous with the actual receipt of the property in order to sustain a conviction. The instant case resembles *Rokoski*, in that appellant's possession of the goods preceeded his knowledge that they were stolen.

Our holding hinges on the meaning of the terms "receive" and "possess." One cannot receive that which is already in his possession.

Blacks Law Dictionary, at 1140 (5th Ed. 1979), defines "receive" to mean: "[t]o take into possession and control; accept custody of; collect." The United States District

Court for the Eastern District of Tennessee has stated in *United States v. Walker*, 384 F.Supp. 262, 263 (E.D.Tenn.1973), that receipt of stolen property means "acquisition of control in the sense of physical dominion or apparent legal power to dispose of property ...." *See also United States v. Strauss*, 678 F.2d 886, 894 (11th Cir.) *cert. denied*, 459 U.S. 911, 103 S.Ct. 218, 74 L.Ed.2d 173 (1982) (accepting goods and having either physical control or apparent legal power over them is sufficient to show that an individual "received" them). Appellant "received" the weapons when he first took them into his automobile for transportation to Sergeant Brackett. Appellant "accepted custody of" the weapons at this point. However, appellant lacked the criminal knowledge of the weapons' stolen character at that time.

■ Appellant subsequently retrieved the weapons from Sergeant Brackett's house and placed them in the back seat of his car for the purpose of transporting them to Koester. Pierce, the ostensible owner, was seated in the front. Notwithstanding the Government's argument to the contrary, appellant did not thereby relinquish custody and control of the weapons to Pierce. Under the facts of this case, we hold that appellant retained at least joint possession (with Pierce) of all the weapons except the rifle earlier sold to Koester until he relinquished the unsold weapons to Pierce in exchange for the $20.00 fee.

We conclude that appellant never "received" the weapons with simultaneous knowledge of their stolen nature. Accordingly, we grant appellant's prayer for relief.[3]

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.[4]

Senior Judge WOLD and Judge FELDER concur.

---

3. The dilemma posed by this case is created by the operative language of the specification under which appellant was convicted. The model used by the Government in drafting the specification for receiving stolen property requires an allegation that "at the time the accused received the property, he then knew it was stolen...." Para. 3–179, Dept. of Army Pam. 27–9, *Military Judges' Benchbook*, 1 May 1982. *See also* para. 213*f* (14), Manual, Change 7 (1982). Under the facts of this case, the Government could have charged the appellant with disposing of stolen property with the knowledge it had been stolen as service discrediting conduct. Article 134, UCMJ. *See United States v. Sadinsky*, 14 U.S.C. M.A. 563, 34 C.M.R. 343 (1964); *United States v. Regan*, 11 M.J. 745 (A.C.M.R.1981); *United*

*States v. Pechefsky*, 13 M.J. 814 (A.F.C.M.R. 1982). The Government could also have opted to charge appellant under Article 134, UCMJ, pursuant to the Assimilative Crimes Act. Kentucky Revised Statutes 514.110 provides: "A person is guilty of receiving stolen property when he receives, retains, or disposes of movable property of another knowing that it has been stolen...." *Hensley v. Commonwealth*, 655 S.W.2d 471 (Ky.Sp.Ct.1983). *Cf. United States v. Wright*, 5 M.J. 106 (C.M.A.1978); *United States v. Rowe*, 13 U.S.C.M.A. 302, 32 C.M.R. 302 (1962).

4. The 9 November 1984 decision of this Court is withdrawn.