**UNITED STATES, Appellee,**

v.

**Staff Sergeant Darrell R. MINOR, 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, United States Army, Appellant.**

**ACMR 8700563.**

U.S. Army Court of Military Review.

4 March 1988.

For Appellant: Major Russell S. Estey, JAGC, Major Kathleen A. Vanderboom, JAGC, Captain Donna L. Wilkins, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Carlton L. Jackson, JAGC, Captain Jody M. Prescott, JAGC (on brief).

Before HOLDAWAY, De GIULIO and CARMICHAEL, Appellate Military Judges.

## OPINION OF THE COURT

CARMICHAEL, Judge:

Before a military judge sitting as a special court-martial, appellant, pursuant to his pleas, was convicted of two specifications of extortion, four specifications of wrongfully accepting U.S. currency from a trainee, and one specification of wrongfully engaging in commercial dealings with a trainee. Extortion is proscribed by Article 127, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 927, and at issue is whether the remaining specifications allege offenses under Article 134, UCMJ, 10 U.S.C. § 934. Specifically, appellant asserts for the first time on appeal that, because the latter specifications fail to state offenses, his pleas of guilty to them are improvident. We agree.

The specifications and charges involved are four specifications under Charge II (acceptance of money), and one specification under Charge III (commercial dealings). The former specifications are identical except for dates, the amounts of money involved, and the names of the enlisted trainees from whom the money was accepted. They read:

In that Staff Sergeant Darrell R. Minor, US Army, Company C, 4th Battalion, 1st Armor Training Brigade, ... did, at Fort Knox, Kentucky, ... on an unknown date between about ..., wrongfully accept ... US currency, the property of Private ..., a trainee, which con-

**900**

duct was [to the] prejudice ... [of] good order and discipline in the Armed Forces.

With regard to Specification 1 of Charge III (the remaining specifications under Charge III were dismissed prior to findings), it reads:

In that Staff Sergeant ... Minor, US Army, Company C, 4th Battalion, 1st Armor Training Brigade, ... did, at Fort Knox, Kentucky, ... on an unknown date between about 15 September 1986 and 9 December 1986, wrongfully engage in commercial dealings with Private ..., a trainee, by selling his watch to the said Private ... for $100.00, US currency, which conduct was to the prejudice of good order and discipline in the Armed Forces.

There are three categories of Article 134 offenses. The above specifications fall into the first category of the Article since they purport to allege conduct to the prejudice of good order and discipline in the armed forces. Manual for Courts–Martial, United States, 1984, Part IV, para. 60c(1) [hereinafter MCM, 1984].

At trial, the military judge *sua sponte* inquired of counsel whether the challenged specifications stated offenses. Trial and defense counsel expressed the belief that they did, but offered little in the way of supporting authority. In response to the judge's comment that such offenses normally are charged as a violation of a punitive regulation, trial counsel explained that appellant's conduct occurred when no local regulation was in effect. The local supplement to an Army regulation had been superseded when the Army regulation was superseded, and appellant's conduct occurred in the hiatus before publication of a local regulation.[1]

Subsequently, the military judge ruled that the specifications did state offenses, at least on their face, reasoning that certain acts between cadre and trainees were *ma-*

*lum in se* (inherently wrong) rather than *malum prohibitum* (wrong because prohibited by law). However, he informed counsel and appellant that the issue had not been finally settled because he needed to know the facts and circumstances of the case to understand why appellant's conduct was wrongful. Accordingly, he would "listen to the evidence" and then determine whether the specifications, in fact, stated offenses.

During the providence inquiry, appellant related that he had borrowed money from one trainee and signed an "I.O.U.," that he had borrowed money from a second trainee on three different occasions, that he had intended to repay the money but had not done so because he was restricted prior to the trainees' graduation, and that he was a drill sergeant and these trainees were in his platoon. Further, appellant believed it was wrong to borrow money from trainees because he had been told it was and because of the element of coercion implicit in his rank and position. However, when he sold his watch to another trainee in the platoon, appellant believed he was engaging in a fair transaction and did not think it was wrongful at the time. Based on these facts, the military judge was satisfied that the specifications stated offenses and found appellant's pleas provident. Although we disagree with the trial judge's ruling, we commend him for his thoughtful, balanced treatment of an issue which over the years has proved a Gordian knot for military appellate courts.

In determining whether a specification which falls into the first category of Article 134, UCMJ, states an offense, the critical inquiry is whether the alleged act is directly and palpably prejudicial to good order and discipline. *United States v. Sadinsky*, 34 C.M.R. 343, 346 (C.M.A.1964); MCM, 1984, para. 60c(2)(a). "Almost any irregular or improper act on the part of a

---

1. The supplement was to Army Regulation 600–20, Personnel—General: Army Command Policy and Procedures [hereinafter AR 600–20], dated 15 October 1980, which was superseded by the current AR 600–20, dated 20 August 1986. These facts underscore the advantage of publishing a local punitive regulation proscribing certain conduct between superiors and subordinates rather than supplementing an Army regulation. *See United States v. Tolkach*, 14 M.J. 239, 244 (C.M.A.1982) (explanation of when publication of a general regulation occurs); MCM, 1984, para. 16c(1) (explanation of a violation of a general regulation).

member of the military service could be regarded as prejudicial in some indirect or remote sense; however, ... [Article 134] does not include these distant effects." MCM, 1984, para. 60c(2)(a). Further, it is the language of a specification that determines its sufficiency and not evidence adduced at trial. *See United States v. Sell,* 11 C.M.R. 202, 206 (C.M.A.1953) (specification sufficient if necessary facts appear "by fair construction ... within the terms of the specification.").

■ Two decisions of the then Army Board of Review provide guidance as to the sufficiency of specifications alleging acts purportedly violating the first category of Article 134, UCMJ. The first is *United States v. Calderon,* 24 C.M.R. 338 (A.B.R. 1957). There, the board held that specifications alleging that the accused was a noncommissioned officer and a cadreman, was assigned to a particular company in a training regiment, and had wrongfully borrowed money from trainees in the same company, were sufficient to state offenses under Article 134. The board noted there was very little precedent as to what constituted a proper relationship between a noncommissioned officer and his subordinates. Still, it concluded that the "conduct described ... [was] so directly prejudicial to discipline as to constitute an offense, without regard to any possible coercion or repayment of the loan." *Calderon,* 24 C.M.R. at 339. On the other hand, the board found that specifications alleging the trainees were in a different company than the accused failed to state offenses. With regard to the latter specifications, the board reasoned they did not imply the use of superior authority to obtain the loans.

The second Board of Review decision is *United States v. Light,* 36 C.M.R. 579 (A.B.R.1965). In *Light,* the board held that the mere borrowing of money by a noncommissioned officer from subordinates did not constitute a violation of Article 134. The accused, a battalion sergeant major, was charged with wrongfully borrowing money from seventeen subordinates, seven of whom were assigned to the same company as the accused. The other ten soldiers were members of the same battalion as the accused but not the same company. There was no evidence that pressure was exerted to obtain the loans or that favors were promised if the loans were made. In the absence of such evidence, the board decided that the superior-subordinate relationship between the accused and his lenders was not in and of itself a circumstance directly and palpably impacting on "good order and military discipline." *Light,* 36 C.M.R. at 585. The board distinguished *Calderon, supra,* as a special circumstance case which held that the act of a training sergeant borrowing from a trainee in his unit was *per se* wrongful.

Judge Cox, writing for the United States Court of Military Appeals in *United States v. Watkins,* 21 M.J. 208 (C.M.A.1986), stated the following test for sufficiency where an accused for the first time on appeal challenged an absence without leave specification to which he had pled guilty:

> *Where ... the specification is not so defective that it "cannot within reason be construed to charge a crime,"* the accused does not challenge the specification at trial, pleads guilty, has a pretrial agreement, satisfactorily completes the providence inquiry, and has suffered no prejudice, the conviction will not be reversed on the basis of defects in the specification.

21 M.J. at 210 (emphasis added).

Applying *Watkins* to the instant case, we find the challenged specifications fail to "demonstrate the proscribed character of ... [appellant's] act[s]," *see Sadinsky,* 34 C.M.R. at 345, and thus cannot reasonably be construed to charge crimes. Guilty pleas are not mystical incantations transforming specifications so defective that they cannot within reason be construed to state an offense into specifications susceptible to such construction.

■ While the specifications here allege appellant's rank and organization, they omit any reference to his position as a drill sergeant. They also fail to allege the trainees' organization. Because of these omissions, the relationship appellant bore to the trainees, that of a cadreman in the same

organization, cannot reasonably be construed from the language of the specifications. Moreover, without the presence of this special cadre-trainee relationship in the pleadings, the acts appellant committed—accepting money from trainees [2] and selling a watch to a trainee—neither make out a crime nor preclude the possibility of innocent conduct.[3] *See United States v. Regan*, 11 M.J. 745, 746 (A.C.M.R.1981) (conduct does not violate Article 134 unless "recognized readily as being criminal."). And although evidence may be used to support the validity of a court's conclusion that the alleged conduct resulted in direct prejudice, it cannot be used to prop up an otherwise defective specification. *Sadinsky*, 34 C.M.R. at 345.

Nor will the addition of words of criminality such as "wrongfully" convert the acts described in these specifications into crimes. "[W]ords of criminality alone" cannot make crimes out of acts which, as alleged, are not criminal. *United States v. McCoy*, 38 C.M.R. 593, 594 (A.B.R.1967); *see also United States v. Shober*, 23 M.J. 249, 250 (C.M.A.1986) (summary disposition) (specification alleging accused had *wrongfully* taken nude photographs too vague and lacked words of criminality); [4] *Regan*, 11 M.J. at 746 n. 2 (words of criminality add nothing to an act which would not be an offense under any circumstances). As for the descriptive phrase "conduct to the prejudice of good order and discipline in the armed forces," while an essential element when instructing court members, it is "nothing more than traditionally permissible surplusage" in a specification. *See generally United States v. Marker*, 3 C.M.R. 127, 134 (C.M.A.1952) (discussing

necessity of alleging "conduct of a nature to bring discredit upon the military service").

We hold, therefore, that the challenged specifications, although appellant pled guilty to them at trial and only first challenged them on appeal, are so defective that they do not state offenses under the Uniform Code of Military Justice. However, consistent with the analysis in *Sadinsky*, our holding does not "... superimpose a requirement that conduct [must] be prohibited by some order, regulation, or statute in order to fall within the proscription of the first category of Article 134 ..." *See Sadinsky*, 34 C.M.R. at 346.

We have considered the issue personally asserted by appellant and find it to be without merit.

The findings of guilty with respect to Charge II and its specifications and Specification 1 of Charge III are set aside, and those specifications and charges are dismissed. The remaining findings of guilty are affirmed.

■ Appellant's sentence, as approved by the convening authority, consists of a bad-conduct discharge, confinement for forty-five days, forfeiture of $300.00 pay per month for three months, and reduction to the grade of Private E–1. On consideration of the entire record, notwithstanding the error noted, we are satisfied that appellant would at least have been sentenced to a bad-conduct discharge if the error had not been committed, and that such a sentence is "appropriate in relation to the affirmed findings of guilty." *United States v. Sales*, 22 M.J. 305, 307–08 (C.M.A.1986).

---

2. "Accept" is commonly understood as meaning to consent to receiving something that is being offered or given. In attempting to allege a criminal act and based on the facts of this case, the term "borrowed" would have been preferable to "accepted." The former provides specificity by describing an affirmative act to obtain the temporary use of property from the owner. Webster's Third New International Dictionary (1981).

3. Depending on the circumstances, relationships between enlisted soldiers of different ranks may constitute fraternization in violation of Article

134, UCMJ. *See United States v. Clarke*, 25 M.J. 631, 634–35 (A.C.M.R.1987).

4. In *Shober*, the Air Force Court of Military Review held that a specification alleging that the accused had wrongfully taken nude photographs of a subordinate civilian employee, not his wife, at an officers' club, failed to state a violation of Article 133, Uniform Code of Military Justice 10 U.S.C. § 933 (conduct unbecoming an officer and a gentleman). *United States v. Shober*, 26 M.J. 501, ACM 25094 (A.F.C.M.R. 1986) (LEXIS, Military library, CMR file).

Reassessing the sentence, only so much of it is affirmed as provides for a bad-conduct discharge.

Senior Judge De GIULIO concurs.

HOLDAWAY, Chief Judge, concurring in the result:

I agree that the specifications in question did not state an offense. I disassociate myself from that part of the opinion that implies that the specification would have been sufficient had the trainee-cadre relationship been pleaded. In my view that is not enough. In *United States v. Calderon*, 24 C.M.R. 338, a board of review did find that a loan solicited by one of the cadre from a trainee was directly prejudicial to discipline and hence violative of Article 134. In a later case, *United States v. Light*, 36 C.M.R. 579, a board of review determined that loans to a battalion sergeant major (SGM) from his enlisted men (EM) were not violations of Article 134 in absence of coercion or some other fact showing misuse of authority. *Calderon* was distinguished, apparently, on the basis that the relationship of cadre-trainee would *per se* preclude such transactions but that the SGM–EM relationship would not. That slices the salami too thin.

A loan as distinguished, say, from absenting oneself without leave or selling drugs is a presumptively legal act. It seems to me that it can be made illegal under Article 134 only if the *circumstances* surrounding the loan are such as to be, *per se*, prejudicial to discipline, *e.g.*, misuse of authority to coerce a loan. I just do not see how the cadre-trainee relationship by itself is enough to show prejudice to good order and discipline. This does not mean that such conduct cannot be regulated. Loans between trainee and cadre or, for that matter, NCO and EM may be thought undesirable and certainly, if permitted, may create the *potential* of coercion, intimidation, or hope for favorable treatment. Regulations forbidding such activity are reasonable. If such regulations are promulgated NCO's are then on notice that such activity is criminal. It is not reasonable, however, to brand an otherwise lawful, indeed innocent, act as criminal because there is merely a potential for abuse. I would specifically overrule *United States v. Calderon*, 24 C.M.R. 338, and apply the rule in *United States v. Light*, 36 C.M.R. 579, to all instances of financial transactions between superior and subordinate that are charged under Article 134, UCMJ.