UNITED STATES

v.

Larry D. JARRELL, Jr., 233–11–2975,
Airman Recruit (E–1), U.S. Navy.

NMCM 92 0370.

U.S. Navy–Marine Corps Court
of Military Review.

Sentence Adjudged 8 Nov. 1991.

Decided 27 July 1993.

Capt Dwight H. Sullivan, USMC, Appellate Defense Counsel.

LT Richard J. Huber, JAGC, USNR, Appellate Government Counsel.

Before FREYER, WELCH and JONES, Senior Judges.

WELCH, Senior Judge:

The first assignment of error[1] challenges the trial judge's acceptance of the appellant's guilty plea to the offense of "jumping from a vessel," a violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[2]

1. I. THE MILITARY JUDGE ERRED BY ACCEPTING APPELLANT'S PLEA OF GUILTY TO THE OFFENSE OF JUMPING FROM A VESSEL WHERE THE PROVIDENCE INQUIRY ESTABLISHES THAT HE ACTUALLY JUMPED FROM A BARGE.

II. APPELLANT'S COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. (CITATIONS OMITTED.) BECAUSE THIS ERROR IS JURISDICTIONAL, THE ISSUE IS NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL.

III. THE COURT–MARTIAL HAD NO JURISDICTION BECAUSE THE MILITARY JUDGE'S LACK OF A FIXED TERM OF OFFICE LEFT THE MILITARY JUDGE INSUFFICIENTLY INDEPENDENT TO SATISFY THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE. (CITATION OMITTED.) BECAUSE THE ERROR IS JURISDICTIONAL AND THE RECORD CONTAINS NO EVIDENCE OF A *KNOWING* WAIVER OF APPELLANT'S RIGHT TO AN INDEPENDENT MILITARY JUDGE, THE ISSUE IS NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL.

2. Appellant was tried by a special court-martial, military judge alone. Pursuant to pleas of guilty, he was convicted of two specifications of unauthorized absence in violation of Article 86, UCMJ, 10 U.S.C. § 886, and one specification of jumping from a vessel in violation of Article 134, UCMJ. He was sentenced to confinement for 45 days, forfeiture of $200.00 pay per month for two months, and a bad-conduct discharge. The convening authority approved the sentence

Based on appellant's comments to the trial judge after he entered pleas of guilty, the facts are these:

a. At about 0300, 11 October 1991, appellant was on board USS SARATOGA, then alongside a pier at Mayport, Florida. Appellant felt he "just couldn't take no more" and "should be at home." To accomplish that end, he got certain personal belongings and went to the fantail of the ship. He then walked down the aft ladder from the ship to a barge tied to the ship. The barge was "the full width of the ship," its deck, 3 or 4 feet above the surface of the water. He heard the master-at-arms coming, so he dropped his bag and jumped into the water.

b. Appellant jumped into the water from the side of the ship "furthest away from the pier the ship was tied up on." He then "swam across the basin" to another pier "a little more than 100 yards" away, got out of the water, and walked off the base.

c. Appellant admitted to the judge that his entry into the water was an intentional act that he knew to be wrong and which was not the result of a push, slip, fall, or "anything of that nature." He also acknowledged that the SARATOGA was a vessel, and that his conduct was prejudicial to good order and discipline in the Armed Forces as that term was defined by the judge.

■ The actions of the appellant do not "fall short of the conduct described in *United States v. Sadinsky,* 14 U.S.C.M.A. 563, 34 C.M.R. 343 (1964), and characterized in *United States v. Parks,* 3 M.J. 591 (N.C.M.R.1977)," as concluded in the dissent.[3] True, *Sadinsky* was a better case than appellant's to support the conclusion that jumping from a ship into the water is conduct prejudicial to good order and discipline in the Armed Forces in violation of Article 134, UCMJ, because Airman Recruit Sadinsky's ship was underway when

he did his bargained-for backflip into the ocean. Nevertheless, appellant, by jumping into the water at 0300 and swimming 100 yards across the bay, created a potentially dangerous situation for himself personally and, most significantly, for other members of the U.S. Navy who might have to come to his rescue. To advance an argument to the contrary is to disregard the lessons learned from the review of numerous investigative reports prepared after Navy and Marine Corps tragic accidents at sea and in harbors. Thus, we are convinced that appellant's actions raised such possibilities as these: appellant could have been hit by another vessel in the bay while swimming in the water; appellant could have been observed in the water and presumed in danger, causing the launching of boats and helicopters to come to his rescue; and, rescue operations could have resulted in other personnel or the appellant being injured due to mishaps that might occur during fast moving operations on and over water at night. The list of potential disasters is endless. The bottom line is, in our opinion, that *Sadinsky,* stands for the principle that jumping from a ship into surrounding waters without good reason is directly and palpably prejudicial to good order and discipline because such activity can disrupt normal shipboard activity and endanger the property of the Navy and the lives of both the foolish jumper and shipmates involved in rescue operations.

■ Since we support the position that one can violate Article 134, UCMJ, by jumping into the water from a ship tied to a pier, we consider that the real issue is whether the plea should be rejected based on the limited and somewhat technical grounds advanced by the appellant (i.e., that he really did not jump from a "vessel," rather he merely walked from the vessel named in the specification to a barge and jumped from the barge). In this case, it is clear that the counsel, the appellant, and

as adjudged, and, except for the bad-conduct discharge, ordered it executed.

**3.** *United States v. Pimental,* No. 88 0103 (N.M.C.M.R. 23 May 1991), cited in the dissent,

is not dispositive because it is an unpublished opinion that resolved in a one paragraph per curiam opinion only the issue raised in that case—and wrongly, in my opinion.

the trial judge believed under one theory or another that appellant jumped into the water from a vessel. This conclusion can be supported by at least two rationales: (a) The word "vessel" includes every description of watercraft or other artificial contrivance used or capable of being used, as a means of transportation on water. Discussion, R.C.M. 103(20), MCM, 1984. The first definition of a barge in *The Random House College Dictionary* (Rev. ed.) is "a flat bottomed vessel, usually without power and intended to be pushed or towed, for transporting freight or passenger." Although the record does not establish the exact description of the barge in question, we can conclude that the "vessel" from which appellant jumped was the barge. (b) Alternatively, we can conclude that the barge was an extension of the ship. *Ergo,* when appellant jumped from the barge, he jumped from the ship. The fact that appellant chose to diminish the risk by not leaping from the aircraft carrier's deck, but decided on the safer course of first descending the aft ladder to a barge moored alongside, before making his plunge from three to four feet above the water's surface, is of no consequence. Had the same ladder extended to the water, we would have no hesitation in saying that appellant had "jumped from the vessel" had his ingress been merely a step into the water. The moored barge, apparently being utilized for ship's work, became a fundamental part of the SARATOGA, essentially an appendage in the same nature as the attached ladder.

■ Frankly, we think either rationale is adequate, and that the assignment of error raises an issue that is of minor significance because the gravamen of the Article 134 offense alleged is "conduct prejudicial to good order and discipline in the armed forces," a phrase perfectly descriptive of appellant's actions when he jumped into the water at the time and place alleged.

■ We find no substantial basis in law or fact for questioning the appellant's guilty pleas; the rejection of the appel-

lant's pleas require more than a mere possibility of a conflict. *United States v. Prater,* 32 M.J. 433, 436 (C.M.A.1991); *United States v. Newsome,* 35 M.J. 749, 751 (N.M.C.M.R.1992).

Accordingly, we find no merit in the first assignment of error, nor in the remaining ones. *United States v. Weiss,* 36 M.J. 224 (C.M.A.1992), *cert. granted,* — U.S. —, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993); *United States v. Graf,* 35 M.J. 450 (C.M.A. 1992).

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge JONES concurs.

FREYER, Senior Judge (dissenting in part/concurring in the result) *:

The appellant's conduct in this case, which consisted of climbing down a ladder onto a barge attached aft of his ship in port and slipping therefrom undetected into the water and swimming to the next pier over, falls far short of the conduct described in *United States v. Sadinsky,* 14 U.S.C.M.A. 563, 34 C.M.R. 343 (1964), and characterized in *United States v. Parks,* 3 M.J. 591 (N.C.M.R.1977). The circumstances of this case, are in substance, no different than if the appellant had climbed down onto the adjacent pier and thence onto the barge and slipped therefrom into the water, or than if a sailor from the disciplinary barracks of the naval station had climbed from the pier onto the barge and slipped therefrom into the water, or than if either had jumped from the pier into the water directly.

Every case in which a member does absent without leave will involve some prejudice to good order and discipline, but not every case in which a member goes absent without leave via water warrants an exception to the general rule that "offenses sounding in unauthorized absence may be reached and penalized only under the provisions of Articles 85, 86, and 87 [10 U.S.C. §§ 885, 886, 887] of the code.... With a single exception not relevant here [probably a reference to breaking restriction],

* Senior Judge Freyer took final action on this case prior to his departure.

there are simply no offenses of an unauthorized absence type cognizable under Article 134." *United States v. Deller,* 3 U.S.C.M.A. 409, 413, 12 C.M.R. 165, 169 (1953).

Thus, in *United States v. Pimental,* No. 88 0103 (N.M.C.M.R. 23 May 1991), this Court set aside a finding of guilty of the Article 134 offense of jumping from a vessel into the water based on a providence inquiry which disclosed that Seaman Apprentice Pimental, then a crewmember of the USS MARS (AFS–1) anchored out in Hong Kong harbor, "just tie the rope on the ship—on the side of the ship and lowered myself down to the water—... [a]nd swam off." *Pimental* record at 22. After reviewing *United States v. Sadinsky,* Paragraph 91, Part IV, Manual for Courts–Martial, United States, 1984, and the *Analysis* thereof, the *Pimental* Court was convinced that the facts admitted by Seaman Apprentice Pimental did not support the Article 134 offense. A *fortiori,* I am so convinced in the case of the appellant here. Thus, in my opinion, the first assignment of error has merit. The remaining assignments of error are without merit. I would set aside the findings of guilty of Charge II and its Specification and affirm the remaining findings of guilty. I would also reassess the sentence in accordance with *United States v. Sales,* 22 M.J. 305 (C.M.A. 1986). In consideration of the appellant's mode of leaving his ship on 11 October 1991, a matter in aggravation, I concur with the majority that the sentence approved below should be affirmed.