**UNITED STATES, Appellee,**

v.

**Specialist Daniel J. SAUNDERS III, United States Army, Appellant.**

**ARMY 9900899.**

U.S. Army Court of Criminal Appeals.

10 June 2002.

---

2. The convening authority took action on the same day he received the SJAR.

For Appellant: Colonel Adele H. Odegard, JA; Lieutenant Colonel David A. Mayfield, JA; Major Jonathan F. Potter, JA; Captain Kevin J. Mikolashek, JA (on brief); Major Steven P. Haight, JA.

For Appellee: Colonel Steven T. Salata, JA; Lieutenant Colonel Margaret B. Baines, JA; Captain Janine P. Felsman, JA (on brief).

Before CANNER, Senior Judge, CARTER, and HARVEY, Appellate Military Judges.

## OPINION OF THE COURT

CARTER, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of attempted rape, failing to obey a no-contact order issued by his company commander (five specifications), forcible anal sodomy, assault consummated by a battery (three specifications), unlawful entry, and "harassment" (stalking) in violation of Articles 80, 92, 125, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. § 880, 892, 925, 928, and 934 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to Private E1, and directed that appellant be

credited with 145 days of pretrial confinement against the sentence to confinement.

Appellant raises four assignments of error in this Article 66, UCMJ, 10 U.S.C. § 866, appeal. Appellant asserts that the Article 134, UCMJ, harassment specification failed to state an offense because it was modeled after a Georgia stalking statute and appellant's crimes and trial occurred in Germany, thereby failing to provide appellant with sufficient notice of the criminality of his conduct. We disagree. However, we agree with appellant's two assignments of error concerning misstatement of the findings of guilty in the staff judge advocate's Rule for Courts–Martial [hereinafter R.C.M.] 1106 recommendation (SJAR). We will moot appellant's fourth assignment of error, that his unlawful entry conviction is multiplicious with that portion of his harassment conviction finding him guilty of unlawful entry, by dismissing the unlawful entry language from the harassment specification.

### Facts

While serving in Germany, appellant began to date a German woman, H, in January 1998. Approximately three months later, H accepted appellant's proposal to marry him. Appellant and H did not set a marriage date because appellant first had to divorce his wife. Appellant became very possessive of H and she began to question whether she wanted to marry appellant. About September 1998, H broke her engagement to marry appellant, but told him they could still be friends. Appellant attempted to spend as much of his off-duty time with H as possible, while H attempted to reduce her contact with appellant. About January 1999, H told appellant that she no longer wanted to have any contact with him. Appellant responded by threatening to kill himself. In February 1999, H had consensual intercourse with appellant.

On 21 March 1999, appellant left a note on H's apartment door saying he was going to commit suicide by taking pills. After reading the note, H contacted both the German police and the military police for help. Upon returning home after meeting with the military police, H found appellant waiting for her in his car outside her apartment. H saw three empty pill bottles in appellant's car and thought appellant had taken the medications in them. H told appellant that the police were looking for him and that she just wanted to be left alone. Later on 21 March 1999, appellant was taken to a local hospital for treatment and observation. On or about 22 March 1999, he was transferred to the Landstuhl Army Regional Medical Center (LARMC) for psychiatric treatment. On 30 March 1999, appellant was released from the LARMC and returned to his unit. Upon his return, appellant tried to enter H's apartment. H contacted appellant's company commander for help in keeping appellant away from her.

On 31 March 1999, and again on 13 April 1999, appellant's company commander gave appellant a written and oral order to have no contact with H. However, appellant continued to contact H on an almost daily basis. These repeated contacts culminated in a series of events that occurred throughout the day on 23 April 1999, when appellant assaulted H three times, unlawfully entered her apartment, forcibly committed anal sodomy upon her, and attempted to rape her. Ultimately, H escaped from her apartment by jumping off her balcony and running to a neighbor who called the police. Appellant was apprehended later that evening hiding in an automobile near H's apartment and was placed in pretrial confinement.

The government created a "harassment" specification under clause 2, Article 134, UCMJ (service discrediting conduct), modeled on the Georgia stalking statute,[1] alleging:

1. "A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person." GA. CODE ANN. § 16–5–90(a)(1999). The statute defines "harassing and intimidating" as "a knowing and willful

course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose." *Id.; see also United States v. Rowe,* ACM 32852, 1999 WL 305092 (A.F.Ct.

In that SPC Daniel Saunders, U.S. Army, did at or near Wuerzburg, Germany, on divers occasions between on or about 1 October 1998 and 23 April 1999, knowingly and willfully harass Ms. [H], by following her without consent, waiting for her at home, showing up at her home uninvited at all hours of the day and night, attempting to gain access to her home, breaking into her home, calling her at work from her home phone, wrongfully calling her incessantly on the phone at all hours of the day at both home and work, wrongfully refusing to leave her house when asked, locking himself in rooms of her home, repeatedly threatening to kill himself, wrongfully visiting her place of employment, *wrongfully calling*, visiting and attempting to gain access to her parent's home in Lichtenfels, Germany, and willfully damaging her car, thereby causing the said Ms. [H] substantial emotional distress and reasonable fear of bodily injury, such conduct being of a nature to bring discredit upon the armed forces.[2]

At trial, the military judge denied a defense motion to dismiss this specification for failure to state an offense but ruled that the word "willfully" made it a specific intent offense.[3]

The military judge instructed the members that there were four elements to the harassment specification:

(1) that on divers occasions between the dates alleged, at or near Wuerzburg, Germany, appellant knowingly and willfully harassed H;

(2) that he did so by committing the alleged acts;

(3) that this conduct caused H substantial emotional distress or reasonable fear of bodily harm, or both; and

(4) that the conduct was of a nature to bring discredit upon the armed forces. R. at 582–83, 595–97.

The military judge advised the members that "[s]ervice discrediting conduct is conduct which tends to harm the reputation of the service or lower it in public esteem." She also advised the members that "harassed" means "a knowing and willful course of conduct directed at a specific person which would cause substantial emotional distress in a reasonable person or which placed that person in reasonable fear of bodily injury."

In their R.C.M. 1105 submission to the convening authority, trial defense counsel again asserted that the harassment specification failed to state an offense.

### Harassment

■ Congress, recognizing that the UCMJ's punitive articles might not cover every conceivable need for military discipline, created a punitive General Article (Article 134) authorizing trial and punishment by court-martial of "all disorders and neglects to the prejudice of good order and discipline in the armed forces" (clause 1), of "all conduct of a nature to bring discredit upon the armed forces" (clause 2; used in appellant's case), and of "crimes and offenses not capital" (clause 3). UCMJ art. 134. The President has used the General Article to create more than fifty new criminal offenses not covered by the specific punitive articles in the UCMJ. *See Manual for Courts–Martial, United States* (2000 ed.) [hereinafter MCM], Part IV, para. 61–113. However, the President's creation of offenses under the General Article is not exclusive. MCM, app. 23, Analysis

Crim.App. 7 Apr. 1999) (unpub.) (affirming Article 134, UCMJ, conviction modeled on this statute for offense committed off-base in Georgia and tried at Air Force base in Georgia), *pet. denied,* 52 M.J. 417 (1999).

2. The members found appellant not guilty of the underlined language and substituted a date of 21 March 1999 for the start of the offense. We find the words "wrongfully calling" (highlighted in italics) to be redundant with other language not excepted by the members and will dismiss these words in our decretal paragraph.

3. During the findings portion of the trial, the military judge permitted the defense to call a forensic psychiatrist to testify concerning appellant's personality disorders that could negate his ability to form the specific intent to "knowingly and willfully" commit the harassment offense. The military judge also instructed the members on the defense of partial mental responsibility as it related to appellant's ability to "willfully" harass H.

of Punitive Articles, at A23–16. The President specifically authorized, subject to certain limitations,[4] that conduct that is not an offense under the specific punitive articles of the UCMJ or not included within the list of offenses created by the President, may be charged in a newly-created specification under clause 1 or 2 of Article 134, UCMJ. MCM, Part IV, para. 60c(6)(c); *see also United States v. Sadinsky,* 14 U.S.C.M.A. 563, 565, 34 C.M.R. 343, 345, 1964 WL 5026 (1964) (Although Article 134, UCMJ, by its definition is intended to prohibit acts not otherwise covered by the UCMJ, it is "not a catchall as to make every irregular, mischievous, or improper act a court-martial offense.").

"Harassment" is not an offense under any of the UCMJ's specific punitive articles nor is it one of the offenses created by the President under the General Article (Article 134).[5] In *United States v. Sweeney,* 48 M.J. 117 (1998), our superior court affirmed an airman's conviction for violating a North Carolina stalking statute as a clause 3, Article 134 offense, as assimilated under the Federal Assimilative Crimes Act, 18 U.S.C. § 13. There is no local state law to assimilate in appellant's case because his harassing conduct occurred in Germany. There is a federal Interstate Stalking statute,[6] but it was not directly applicable to appellant's misconduct because it applies only within the "special maritime and territorial jurisdiction of the United States." *See* 18 U.S.C. § 7.[7] Accordingly, under the circumstances of this case, we are satisfied that the government had the authority to charge a "harassment" offense under either clause 1 or 2 of Article 134, UCMJ.

 We find no merit to appellant's assertion that the harassment specification is invalid because it was modeled after a Georgia stalking statute when the misconduct occurred in Germany. In any situation where no federal statute is directly applicable or no state statute is available for assimilation, the government may nevertheless use an existing federal or state statute as a guide in developing the language of the specification and the elements of the offense. *See generally,* MCM, Part IV, para. 60c(4)(c)(i). We find nothing inherently wrong with using an existing statute from another jurisdiction as a sample from which to draft a new offense under clause 1 or 2 of Article 134, UCMJ, to capture wrongful conduct that is legitimately criminalized within the civilian sector.

 The sufficiency of notice of criminality of a specification charged under the General Article is examined in light of the conduct with which an accused is charged. *See Parker v. Levy,* 417 U.S. 733, 757, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (citation omitted); *see also United States v. Guerrero,* 33 M.J. 295, 297–98 (C.M.A.1991) (upholding a cross-dressing specification charged under the General Article and emphasizing that the facts surrounding the specific conduct determine the criminality of the offense and establish the required notice of criminality). Appellant was on notice that harassment (stalking) was an offense because it is generally recognized as such by other jurisdictions.[8] *See United States v. Vaughan,* 56

---

4. Article 134, UCMJ, may not be used to create or modify the elements of: (1) a capital offense; (2) an offense for conduct already covered by Articles 80–132, UCMJ; or (3) an offense created by the President in the MCM under the General Article. *See* MCM, Part IV, para. 60(c)(5).

5. We note that sexual harassment may constitute cruelty and maltreatment of a military subordinate under Article 93, UCMJ, 10 U.S.C. § 893. We need not decide in this case whether Article 93, UCMJ, preempts a general harassment charge under Article 134, UCMJ, when the victim is the military subordinate of the accused.

6. "Whoever travels across a State line or within the special maritime and territorial jurisdiction of the United States with the intent to injure or

harass another person, and in the course of, or as a result of, such travel places that person in reasonable fear of the death of, or serious bodily injury [] to, that person or a member of that person's family" is guilty of interstate stalking. 18 U.S.C. § 2261A (1999).

7. Some federal criminal offenses such as counterfeiting, 18 U.S.C. §§ 470–471, however, are applicable to persons subject to the UCMJ regardless of where the wrongful act or omission occurred. *See* MCM, Part IV, para. 60c(4)(b).

8. " '[M]ost states define stalking as the willful, malicious, and repeated following and harassing of another person, [while] some States include in their definition such activities as lying-in-wait,

M.J. 706, 709 (A.F.Ct.Crim.App.2001) (holding that child criminal neglect statutes in other jurisdictions put appellant on notice of the criminality under the General Article of his child neglect conduct). Indeed, the news media has widely publicized how stalking/harassment of public figures, who arguably have less privacy rights, can be a criminal offense in civilian jurisdictions.

■ In appellant's case, the government elected to charge appellant's harassment as "conduct of a nature to bring discredit upon the armed forces" under clause 2, Article 134, UCMJ. As the military judge instructed the members in appellant's case, clause 2 makes punishable conduct which has a tendency to harm the reputation of the service or which tends to lower it in public esteem. MCM, Part IV, para. 60c(3). Some acts are inherently service discrediting, while others require an assessment of the circumstances surrounding the commission of the offense. *United States v. Johnson*, 39 M.J. 1033, 1037–38 (A.C.M.R.1994) (citations omitted); *see also Parker*, 417 U.S. at 755–56, 94 S.Ct. 2547 (Article 134 "by [its] terms or as authoritatively construed appl[ies] without question to certain activities, but [its] application to other behavior is uncertain." (citation omitted)).

We find that in appellant's case the acts charged are not inherently service discrediting and must be considered in the context of appellant's relationship with H. The members changed the beginning date of the harassment specification from 1 October 1998 to 21 March 1999, the date that H reported appellant's suicide attempt to German and military police and again told appellant that she just wanted to be left alone. After returning from a week of inpatient psychiatric treatment on 30 March 1999, appellant tried to enter H's apartment. Appellant received written and oral orders from his company commander on 31 March 1999, and again on 13 April 1999, directing him to have no contact with H. Appellant knowingly and willfully ignored those orders and continued to

harass H almost every day in April until his sexual assaults upon her on 23 April 1999 resulted in him being placed in pretrial confinement.

Considering the record as a whole, we find as fact that appellant could not have reasonably believed that his nonconsensual conduct towards H was innocent, desired by her, or lawful. He was on notice and knew, or should have known, of the service discrediting nature and the criminality of his conduct. Appellant's conduct harmed the reputation of the Army among the German nationals who witnessed his actions, investigated his activities, treated H's injuries, and testified at appellant's court-martial. Appellant's conduct was not merely "irregular, mischievous, or improper," *Sadinsky*, 34 C.M.R. at 345, but was a knowing and willful course of conduct directed at H that caused her substantial emotional distress and placed H in reasonable fear of bodily injury, as it would in any reasonable person. UCMJ art. 66(c).

In summary, we hold that the harassment specification in this case stated an offense. The specification included words importing criminal intent by charging that appellant did "knowingly and willfully harass" H. *Cf. United States v. Regan*, 11 M.J. 745, 746 (A.C.M.R.1981) (dismissing an Article 134, UCMJ, offense charged under clause 1 and 2 because the specification alleging that Private Regan threw butter on the ceiling of the mess hall failed to include words importing criminal intent). The military judge properly instructed the members in appellant's court-martial on the elements of the offense and defined the term "harassment" for them. *Cf. United States v. Diaz*, 39 M.J. 1114, 1118–19 (A.F.C.M.R.1994) (dismissing Article 134, UCMJ, harassment specification because the military judge committed plain error by not *sua sponte* defining the term harassment for the members). On consideration of the entire record, we find that the harassment specification is legally and factually sufficient. UCMJ art. 66(c); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d

surveillance, nonconsensual communication, telephone harassment, and vandalism.' " *See* Major Eldridge, Joanne P.T., *Stalking and the Military: A Proposal to Add an Anti–Stalking*

*Provision to Article 134, Uniform Code of Military Justice,* 165 Mɪʟ. L. Rᴇᴠ. 116, 124 (2000) (citation omitted), and statutes cited therein.

560 (1979); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

### Erroneous Statement of Findings in SJAR

■ Appellant correctly notes that the SJAR in his case erroneously advised the convening authority that appellant was found guilty of Specification 1 of Charge I (specification alleging failure to obey a no-contact order issued by his company commander was dismissed prior to findings) and Specification 2 of Additional Charge I (specification alleging adultery for which a finding of not guilty was entered by the military judge after findings). Accordingly, the convening authority's purported approval of findings of guilty of these two specifications was a nullity. *See United States v. Diaz*, 40 M.J. 335, 337 (C.M.A.1994); *United States v. Drayton*, 40 M.J. 447, 448 (C.M.A.1994). Applying *United States v. Wheelus*, 49 M.J. 283, 289 (1998), however, we find that appellant has made no colorable showing of possible prejudice to his substantial rights concerning the approved sentence. UCMJ art. 59(a), 10 U.S.C. § 859.

The convening authority knew that appellant harassed H for over a month, ultimately assaulted her three times, unlawfully entered her home, attempted to rape her, and anally sodomized her by force. The SJAR erroneously advised the convening authority that appellant was also convicted of adultery and six, rather than five, specifications of violating the no-contact order. Under the facts of this case, we are satisfied that a correct statement of the findings in the SJAR would not have affected the convening authority's decision to approve the adjudged sentence to a bad-conduct discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to Private E1.

### Decision

We have considered the numerous matters personally asserted by appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit. The purported approval of findings of guilty of Specification 1 of Charge I and Specification 2 of Additional Charge I are set aside and those Specifications are dismissed.

The court affirms only so much of the finding of guilty of Specification 1 of Additional Charge I as finds that appellant did, at or near Wuerzburg, Germany, on divers occasions between on or about 21 March 1999 and 23 April 1999, knowingly and willfully harass Ms. [H], by showing up at her home uninvited at all hours of the day and night, attempting to gain access to her home, calling her at work from her home phone, wrongfully calling her incessantly on the phone at all hours of the day at both home and work, wrongfully refusing to leave her house when asked, and repeatedly threatening to kill himself, thereby causing the said Ms. [H] substantial emotional distress and reasonable fear of bodily injury, such conduct being of a nature to bring discredit upon the armed forces, in violation of Article 134, Uniform Code of Military Justice.

The remaining findings of guilty are affirmed. Reassessing the sentence based on the errors noted, the entire record, and the principles in *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), the court affirms the sentence.

Senior Judge CANNER and Judge HARVEY concur.