BAKER, Judge
(dissenting):
I respectfully dissent for three reasons. First, as discussed in Part I, this case presents a straightforward application of Rule for Courts-Martial (R.C.M.) 307. The text of the specification, which referenced wrongful adulterous conduct on a date certain with a person certain, necessarily implied the terminal element of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006). The Manual for Courts-Martial, United States (2008 ed.) (MCM) expressly states so. Military practice consistently provides so. And, this Court’s case law has always concluded so.
Second, as discussed in Part II, the majority’s opinion reaches beyond the needs of this case, and appears to put in question, if not invalidate, all Article 134, UCMJ, convictions past and present, that did not or do not include the terminal element in the specification. While pleading the terminal element might be good practice, it is not required. Such a sea change runs counter to the plain language of R.C.M. 307, long-standing practice, and principles of stare decisis that are particularly apt in the Article 134, UCMJ, context. One is left to ask: If the specification in Appellant’s ease does not implicitly include the terminal element, when would a specification include the terminal element by implication?
Third, as considered in Part III, the majority opinion raises more questions than it answers. A number of critical systemic legal policy questions remain open. What status, if any, does the Manual play in the context of Article 134, UCMJ? What role does the Commander in Chief play, if any, in defining the Rules for Courts-Martial (R.C.M.) and the elements of Article 134, UCMJ? Finally, has Article 134, UCMJ, lost its essential character as a predictable, and therefore fair and useful, element of military discipline?
I.
The legal question presented in this case is straightforward: Does the specification allege every element of the charged offense expressly or by necessary implication? In my view, the answer is yes. The specification at issue states:
Specification: In that Lance Corporal James N. Fosler ... a married man, did, at or near Naval Station, Rota, Spain, on or about 26 December 2007, ... wrongfully hav[e] sexual intercourse with [SK], a woman not his wife.
To start with the obvious, the specification does not expressly allege either of the terminal elements for an offense under clauses 1 or 2 of Article 134, UCMJ. Thus, the question is whether the elements of service discrediting conduct or conduct prejudicing good order and discipline are alleged by nec *241 essary implication, as permitted by the text of R.C.M. 307.[1] The answer is yes.
First, the charge alleges that Appellant violated Article 134, UCMJ. That necessarily implies that Appellant violated either clause 1, clause 2, clause 3, or some combination of the three clauses.
Second, the specification expressly states that Appellant violated Article 134, UCMJ, on a date certain, “on or about 26 December 2007,” by “having sexual intercourse with [SK], a woman not his wife.” Thus, the specification expressly states that Appellant committed adultery.
Third, the specification expressly states that Appellant engaged in this conduct “wrongfully.” Thus, his conduct was not mere adultery, but wrongful adultery in the context of the military. As the majority itself acknowledges “wrongful” is a word of criminality. Thus, the specification charges appellant with criminal adultery in the military and not mere adultery.
Fourth, for adultery to be criminal, “the adulterous conduct must either be directly prejudicial to good order and discipline or service discrediting.” MCM, pt. IV, para. 62.c. That is the only manner in which adultery can be criminal under the article. Moreover, the specification in Appellant’s case is based on the sample specification provided in the Manual.[2] Thus, a specification alleging wrongful adulterous conduct under Article 134, UCMJ, necessarily implies that the conduct is service discrediting or prejudicial to good order and discipline. That is the basis on which the President has authorized its prosecution.
Finally, because the specification provides the specific date of the conduct concerned, as well as the name of the other party, Appellant was on notice as to what alleged facts in support of these elements he would be required to meet. As a result, the specification satisfied Appellant’s right “to be informed of the nature and cause of the accusation.” U.S. Const, amend. VI.
Nonetheless, the majority concludes that an allegation of wrongful adulterous conduct on a date certain charged under Article 134, UCMJ, does not imply that conduct is either service discrediting or prejudicial to good order and discipline. This conclusion celebrates form over substance; as surely the constitutional principle at stake is satisfied as is the purpose behind R.C.M. 307: fair notice to the defendant as to what he will have to defend against.
What is more, and more important from a systemic standpoint, the majority “call[s] into question the practice of omitting the terminal element from the charge and specification” in the context of Article 134, UCMJ, offenses generally. Fosler, 70 M.J. at 228. Posing the question, in turn places in doubt the text of R.C.M. 307, which plainly permits specifications to reference elements by necessary implication. Thus, at the very least, as the Chief Judge notes:
Given the significant reliance on Article 134 charges in maintaining good order and discipline in the armed forces, the majority opinion is likely to lead to extensive litigation about the impact of the decision on pending courts-martial and appellate proceedings; and the decision may result in collateral challenges to prior convictions that relied upon the traditional specification.
Fosler, 70 M.J. at 231-32 (Effron, C.J., dissenting). Whether done expressly, or by implication, the new court-made standard may as a practical matter have the effect of invalidating the text of R.C.M. 307. If the terminal element is not implied in Appellant’s case, it is not clear under what conditions the terminal element might ever be implied in the context of an Article 134, UCMJ, offense.
*242 II.
There are several additional flaws in the analysis that warrant discussion. First, the majority’s analysis relies on a string of cases from the past two years that are not on point, United States v. McMurrin, 70 M.J. 15, 17 (C.A.A.F.2011); United States v. Girouard, 70 M.J. 5, 9 (C.A.A.F.2011); United States v. Jones, 68 M.J. 465, 468 (C.A.A.F.2010); United States v. Miller, 67 M.J. 385, 388-89 (C.A.A.F.2009); and United States v. Medina, 66 M.J. 21, 24-25 (C.A.A.F.2008). These cases address Article 134, UCMJ, but they do not address R.C.M. 307 or fair notice of the terminal element for offenses charged under Article 134, UCMJ. The first four cases address lesser included offenses. The latter case is about the right of defendants to know what offense they are pleading to at the time they plead, thus barring an appellate court from affirming a plea to a distinct offense after the fact and while a case is on appeal. Nor do the heightened notice standards applicable to guilty pleas or lesser included offense instructions address the same constitutional concerns as the notice pleading standard applicable to specifications — until now. The majority compares apples to oranges. There are no double jeopardy concerns, for example, created by implying the terminal element of Article 134, UCMJ, that would necessitate the same notice standard as the guilty plea and lesser included offense cases. In short, these cases do not address whether a specification under Article 134, UCMJ, is or is not constitutionally sufficient to state an offense.
Second, the majority’s analysis ignores long-standing military practice as well as the principles embedded in the doctrine of stare decisis, which are particularly relevant in light of this continuous military practice. Indeed, as the Chief Judge documents, the majority whistles past sixty years of precedent and many more of continuous and consistent practice by calling it “historical.” Fosler, 70 M.J. 223 at 232-33. However, we should be clear. What the majority dubs “historical” is the current, consistent, and continuous everyday practice in the military. It is consistent with the Manual. It is consistent with this Court’s precedent. And, it is reflected in the forty-five trailer cases currently pending resolution of this case. The number is growing. In such a context, the principle of stare decisis would seem particularly suited.
As the Court has stated, the doctrine of stare decisis is “the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.” United States v. Rorie, 58 M.J. 399, 406 (C.A.A.F.2003) (quoting Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720, (1991)). Stare decisis is a principle of decision making and need not be applied when the precedent at issue is unworkable or badly reasoned. United States v. Tualla, 52 M.J. 228, 231 (C.A.A.F.2000). “As a general matter, however, adhering to precedent is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right.” Id. (citation and quotation marks omitted). In this case, the law is both settled and settled correctly.
During its first term, this Court was presented the question before the Court today: was it necessary to plead the so-called terminal element of then Article 96 of the Articles of War. In United States v. Marker, 1 C.M.A. 393, 3 C.M.R. 127 (1952), the accused, a civilian, stood convicted of three specifications alleging wrongful acceptance of unlawful gifts of clothing, payments, and a house from a tire company in Japan. Upholding the convictions, this Court held:
[W]e find no reason for the inclusion in the specifications of the words “conduct of a nature to bring discredit upon the military service.” In truth, we believe the suggested language to be nothing more than traditionally permissible surplusage in specifications laid under Article of War 96, supra. Its use therein can add nothing of legal effect to an allegation of conduct not of such a discrediting nature — and its omis *243 sion detracts not at all from conduct which clearly is.[3]
Marker, 1 C.M.A. at 400, 3 C.M.R. at 134. The Court’s reasoning rested on the principle set forth in Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932). It retains its vitality today.
The true test of the sufficiency of an indictment is not whether it could have been more definite or certain, but whether it contains the elements of the offenses intended to be charged. If the indictment informs the accused of what he must be prepared to meet, and is sufficiently definite to eliminate the danger of future jeopardy, it will be held sufficient.
Marker, 1 C.M.A at 400, 3 C.M.R. at 134. This Court concluded that the specifications at issue in Marker met these criteria.[4] Two months later in United States v. Herndon, 1 C.M.A. 461, 4 C.M.R. 53 (1952), the Court considered whether or not a specification alleging receipt of stolen property under Article 134, UCMJ, stated an offense. Importantly, the specification failed to allege the terminal element. Although the issue presented for review was slightly different, the Court cited Marker in holding that “the specification ... herein is not fatally defective, but instead alleges properly an offense under Article 134.” Herndon, 1 C.M.A. at 465, 4 C.M.R. at 57.
This practice continued apace until the issue returned on appeal thirty years later in United States v. Mayo, 12 M.J. 286 (C.M.A.1982). There, the appellant was convicted under Article 134, UCMJ, for communicating a bomb hoax. Mayo contended that the specification was insufficient under Article 134, UCMJ, because it did not allege that the accused’s conduct was to the prejudice of good order and discipline. Id. at 293. Citing Marker and Herndon, this Court summarily disposed of Mayo’s contention stating, “Short forms of Article 134 specifications do not require an allegation as to the character of the accused’s conduct.” Id.
Today, thirty years since Mayo, the Court jettisons this precedent. However, there is nothing in the record that indicates longstanding practice and law in this area is unworkable, badly reasoned, or unfair. In point of fact, the enduring nature of these precedents, which have gone unchallenged, suggests that this customary practice has and continues to be quite workable. This Court’s recent reversal of long-standing precedent in the area of Article 134, UCMJ, lesser included offenses does not demonstrate otherwise. Those cases addressed the issue of whether the terminal element in Article 134, UCMJ, could be implied in specifications alleging violations of the enumerated offenses. The issue here is distinct; can the terminal element of Article 134, UCMJ, be implied in the context of a specification alleging an Article 134, UCMJ, offense, where the President has provided in the Manual that the alleged misconduct can only be charged under Article 134, UCMJ.
The majority’s holding also contradicts long-standing precedent concerning the sufficiency of a specification generally. In United States v. Sell, 3 C.M.A. 202, 11 C.M.R. 202 (1953), notwithstanding its citation to the Hagner language in earlier cases, the Court nonetheless felt there was still uncertainty in the military justice system as to the test to be applied. 3 C.M.A. at 206, 11 C.M.R. at 206. The Court took the language in Hagner, expanded upon it and announced the following:
The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.
*244 Id. In United States v. Fout, 3 C.M.A. 565, 568, 13 C.M.R. 121, 124 (1953) (overruled on other grounds by United States v. Watkins, 21 M.J. 208 (1986)), the Court refined this standard stating, “Every essential element of the offense sought to be charged must be alleged directly or by clear implication in the specification.” These cases are the bedrock upon which military practice and R.C.M. 307(c)(3) rest. “A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication.”
The majority’s conclusion also runs counter to case law regarding words of criminality in determining the sufficiency of a specification. A specification is sufficient to allege an offense if “it contains the elements of the offense intended to be charged, including words importing criminality or an allegation as to intent or state of mind where this is necessary.” United States v. Tindoll, 16 C.M.A. 194, 195, 36 C.M.R. 350, 351 (1966). “[A]lthough addition of words of criminality ... cannot make criminal acts which obviously are not, ... [the] allegation serves to demonstrate the proscribed character of accused’s act.”[5] United States v. Sadinsky, 14 C.M.A. 563, 565, 34 C.M.R 343, 345 (1964). In Sadinsky, the accused was convicted of “wrongfully and unlawfully” jumping from his ship while it was underway. 14 C.M.A. at 564, 34 C.M.R. at 343. The Court noted that “the pleading makes clear that accused did not, under unusual circumstances, jump overboard in the course of his legitimate duties as, possibly, to rescue a shipmate, or for some other purpose which might be completely innocent.” 14 C.M.A. at 465, 34 C.M.R. at 345. The Court stated that the critical inquiry for this clause 1 offense was “whether the act was palpably and directly prejudicial to the good order and discipline of the service” and that “such an allegation need not be made in a specification laid under the General Article.” 14 C.M.A. at 566, 34 C.M.R. at 346.
Here, the specification was pleaded under Article 134, UCMJ, and alleged that a married man wrongfully engaged in sexual intercourse with a woman not his wife. This Court has long accepted the traditional meaning of the term wrongful:
That the word [wrongful] has a well-defined meaning when used in criminal statutes is supported by Webster, who defines it as doing a thing “in a wrong manner; unjustly; in a manner contrary to moral lay [sic] or justice.” The word “wrongful” ... when used in criminal statutes, implies a perverted evil mind in the doer of the act. The word “wrongful” implies the opposite of right.
United States v. West, 15 C.M.A. 3, 7, 34 C.M.R. 449, 453 (C.M.A.1964); see United States v. Barner, 56 M.J. 131, 136 (C.A.A.F.2001) (a wrongful act is “one done without legal justification or with some sinister purpose”); accord United States v. Reeves, 61 M.J. 108, 111 (C.A.A.F.2005).
Outside the military context, words of criminality alone might not provide such notice. In the military, however, not all adultery is or should be criminalized. The Manual for Courts-Martial contains a relatively lengthy list of factors to be considered in determining when such conduct is prejudicial to good order and discipline or service discrediting. MCM pt. IV, para. 62.C.2. In the military, the offense of adultery can only be prosecuted if it offends good order and discipline or is service discrediting. Thus, this specification was more than sufficient to meet the constitutional requirement.
And what of other offenses traditionally charged under Article 134, UCMJ? For instance, in the absence of language setting *245 forth the terminal element of Article 134, UCMJ, can one charged with willfully and wrongfully seizing a person and holding him against his will reasonably assert that he is not on notice that the prosecution intends to proceed against him for kidnapping? See MCM pt. IV, para. 92. Furthermore, could one credibly claim, in the case of kidnapping, that he is not sufficiently apprised that such conduct is prejudicial to good order or service discrediting?
Finally, the majority appears to conflate the requirement that a specification state an offense with an accused’s right to more specificity in the allegation. The majority takes the position that the specification was constitutionally deficient because it failed to inform the accused as to which theory of liability contained in the terminal element the Government intended to pursue. An accused does have a right to know under what statutory theory the government is proceeding against him in those instances where the statute provides alternative ways it can be violated. However, there is no constitutional requirement that the specification set forth such theories as long as the specification otherwise meets the test for sufficiency. Here, as recounted in Part I, the specification clearly indicated that the Government was proceeding on a theory that Appellant’s conduct was service discrediting and/or undermined good order and discipline. The law is “not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged.” Hagner, 285 U.S. at 431, 52 S.Ct. 417. If there are several means of committing the offense contained in the statute, the accused has a right to have the specification made more definite. State v. Campbell, 06-0286, pp. 93-94 (La. 05/21/08); 983 So.2d 810, 870 (in murder case “a defendant may procure details as to the statutory method by which he committed the offense through a bill of particulars”); People v. Ingersoll, 181 Colo. 1, 506 P.2d 364, 365 (1973) (in felony theft case, where offense charged may be committed in alternative ways, defendant may require prosecution to state particular manner in which he committed offense by filing motion for bill of particulars); accord State v. Carbone, 172 Conn. 242, 374 A.2d 215, 224 (1977). Like other jurisdictions, the military justice system provides a remedy if the accused requires more specificity in the allegation, assuming, as in this ease, the specification is sufficient to allege an offense.
R.C.M. 906(b)(6) allows an accused to move for appropriate relief in the form of a bill of particulars. The purpose of a bill of particulars is:
to inform the accused of the nature of the charge with sufficient precision to enable the accused to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable the accused to plead the acquittal or conviction in bar of another prosecution for the same offense when the specification itself is too vague and indefinite for such purposes.
United States v. Williams, 40 M.J. 379, 381 n. 2 (C.M.A.1994); United States v. Mobley, 31 M.J. 273, 278 (C.M.A.1990); R.C.M. 906(b)(6) Discussion. “The purpose of a bill of particulars is to narrow the scope of the pleadings.” United States v. Paulk, 13 C.M.A. 456, 458, 32 C.M.R. 456 (1963). Moreover, if a specification, although stating an offense, is still so defective that the accused appears to have been misled, he may request a continuance. R.C.M. 906(b)(4) Discussion. In this case when defense counsel moved to dismiss at the end of the Government’s case, he did not complain that the defense had been misled because of the absence of language alleging the conduct was prejudicial to good order or service discrediting.[6]
*246 III.
There are a number of legal policy and systemic questions raised by the majority opinion that are left unanswered. An opinion is not required to address all questions in all contexts that might be raised; however, where as here, the opinion represents a sea change in practice and law depending on how it is applied, additional guidance is warranted. A number of questions arise.
First, how does Fosler apply to past and present cases? Although the majority reverses appellant’s conviction based on textual analysis of the particular specification, the opinion appears to implicate and question all Article 134, UCMJ, cases in which the terminal element has not been specified. If so, it has done so without indication as to how this new rule will or should apply to past cases or to cases pending in the military justice system. If a specification fails to state an offense, for example, can an accused ever be convicted of that specification, whether or not he objects to the specification? Can an accused plead guilty to a specification that does not state an offense? If so, how? Similarly, in the context of a contested case, can an accused waive the right to be tried on a specification that does not state an offense? If so, can one knowingly waive that right if counsel and accused were not aware at the time that the specification did not state an offense? And, of course, how does the writ of coram nobis apply to past cases? See United States v. Denedo, 556 U.S. 904, 129 S.Ct. 2213, 173 L.Ed.2d 1235 (2009).
Second, what standing does the Manual now possess in the context of Article 134, UCMJ? Is it law? Does it bind military judges? If the Manual did not place Appellant on notice that he would have to defend against a charge of criminal adultery that was service discrediting or prejudicial to good order and discipline, then one must ask what role or standing does the Manual retain going forward? The question is raised because as recounted in Part I, and in the Chief Judge’s dissent, the Manual states that “the adulterous conduct must either be directly prejudicial to good order and discipline or service discrediting.” MCM, pt. IV, para. 62.C.2. Moreover, Appellant’s specification is based on the sample in the Manual.
The question is procedural as well. Rule for Courts-Martial 307, which is at minimum an exercise in delegated presidential authority pursuant to Article 36, UCMJ,[7] permits elements to be charged by necessary implication. However, there is no guidance from the majority as to how R.C.M. 307 applies to Article 134, UCMJ, offenses if it does not apply in this case. This Court has long stated that the Manual is persuasive authority, but in recent Article 134, UCMJ, cases this Court has not been persuaded. It would seem that if the Commander in Chiefs constitutional authority were relevant in military justice practice, it would be most relevant with respect to Articles 92 and 134, UCMJ, which arguably are most directly related to regulating discipline in the armed forces and not just to providing a system of justice for the armed forces. Without reference to the Manual it is not clear how the President as Commander in Chief might exercise whatever authority he might inherently hold as *247 Commander in Chief in defining the procedure and substance of military justice. And, without reference to the Manual, it is not clear how members of the military will be put on notice as to what conduct might violate Article 134, UCMJ. Certainly, the statutory elements alone do not provide such notice. But if the Manual is unpersuasive here and unpredictable in application, how then is fair notice provided?
One suspects that the issue is not one of fair notice in this case or with R.C.M. 307, but with Article 134, UCMJ, itself. Has Article 134, UCMJ, lost its capacity to serve as a predictable, and thus fair and reliable tool to uphold good order and discipline? Jones, 68 M.J. at 474 (Baker, J., dissenting). Is Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), still good law?
“[T]he military is, by necessity, a specialized society separate from civilian society.” Id. at 743, 94 S.Ct. 2547. And it has, by necessity, “developed laws and traditions of its own during its long history.” Id. Because of the special distinctions separating it from the civilian society, “the military has developed what ‘may not unfitly be called the customary military law1 or ‘general usage of the military service.’” Id. at 744, 94 S.Ct. 2547 (quoting Martin v. Mott, 25 U.S. 19, 12 Wheat. 19, 35, 6 L.Ed. 537 (1827)). The UCMJ “cannot be equated to a civilian criminal code,” id. at 749, 94 S.Ct. 2547, and with respect to Article 134, UCMJ, specifically, it “must be judged ‘not in vacuo, but in the context in which the years have placed it.’” Id. at 752, 94 S.Ct. 2547 (quoting United States v. Frantz, 2 C.M.A. 161, 163, 7 C.M.R. 37, 39 (1953)). Do these observations retain the same force and effect today as they did at the time they were made? Is service custom and practice relevant to Article 134, UCMJ?
These questions all now appear in play. In such a context, one might ask if the interests of justice, due process, and the significant interest in discipline in the military warrant a more holistic executive and legislative review of Article 134, UCMJ, rather than the unpredictable piecemeal adjudication of discrete issues.

. "A specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication.” R.C.M. 307(c)(3).

. The Manual provides the following sample specification:
In that [fill in] (personal jurisdiction data), (a married man/a married woman), did, (at/on board — location) (subject-matter jurisdiction data, if required), on or about [fill in date or range of dates], wrongfully have sexual intercourse with [fill in name of other party], a (married) (woman/man) not (his wife) (her husband).
MCM pt. IV, para. 62.f.

. It should be noted that the term "surplusage” appears to refer to the necessity for including the language in the specification and was not intended to suggest that the language in the statute itself was unnecessary.

. While true, the Court in Marker was analyzing Article of War 96, it is beyond dispute that the language of that article ultimately became the very language of Article 134, UCMJ.

. The majority's citation of United States v. King, 34 M.J. 95, 97 (C.M.A.1992), and United States v. Fleig, 16 C.M.A. 444, 445, 37 C.M.R. 64, 65 (1966), for the proposition that words of criminality do not speak to the elements of the offense is somewhat dubious. Fosler, 70 M.J. at 230-31. The adultery specification in King did not allege the language of the terminal element, but that was not the basis for the Court's conclusion that it failed to state an offense. The problem there was that although wrongfulness was alleged, the specification failed to allege that the accused or the other person was married — an essential element of adultery and the essence of the offense itself. Likewise, in Fleig, a specification purporting to charge the accused with fleeing the scene of a accident failed to state that the accused's vehicle had been in the accident. In both cases, words of criminality alone could not make criminal acts which obviously were not.

. The offense of larceny under Article 121, UCMJ, is a classic example of how the aforementioned long-standing principles play out. Contained in the statutory text of Article 121, UCMJ, are three alternative methods of committing the offense — a wrongful talcing, obtaining or withholding. The statute also requires that the offender harbor the specific intent to permanently deprive or defraud. Yet, since (and even before) the inception of the UCMJ, it has been permissible to simply allege in the specification that the accused "did steal.” Presumably, if the accused desires specificity from the prosecution as to which "theory” of larceny is being pursued *246 against him, he may move for a bill of particulars. Neither this Court nor any other jurisdiction where a larceny statute is derived from the common law has ever required otherwise. Apparently, the words of criminality, namely, "did steal" are sufficient to not only imply the essential element of specific intent, but also to encompass any (or all) of the three alternative means of committing the offense of larceny. Given this, it seems incongruous that this Court should hold that a specification alleging wrongful adultery pleaded under Article 134, UCMJ, is constitutionally deficient to provide notice to an accused of the criminal character of his conduct. Here, Appellant could have simply moved to require the Government to specify which alternative method under Article 134, UCMJ, was being pursued.

. The text of Article 36(a), UCMJ, is as follows:
Pretrial, trial, and post-trial procedures, including modes of proof, for cases arising under this chapter triable in courts-martial, military commissions and other military tribunals, and procedures for courts of inquiry, may be prescribed by the President by regulations which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with this chapter.